from the defendant the consideration of the bond and mortgage. We may assume for the purposes of this appeal, which, however, we do not decide as matter of law, that Stewart had such authority; but the judgment must nevertheless be reversed, because the defendant did not pay the whole of the consideration to Stewart. He paid part of it to Burr. It does not clearly appear that more than $1,600 was paid to Stewart. Any payments made to Burr, or to any person other than Stewart, were clearly unauthorized. And if it be assumed that Stewart had authority to receive from the defendant the money for the plaintiff, the case does not show, as a matter of law, that Stewart was authorized to disburse such money for the plaintiff, except said sum of $600, or to direct its payment by the defendant to any other person; nor does it appear that Stewart directed the defendant to make payment to any other person. No other reason is suggested by the defendant why this judgment should be affirmed.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

### WALSH v. FONDA, J. & G. R. CO.

(Supreme Court, Appellate Division, Third Department. June 27, 1906.)

STREET RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

> Deceased, occupying a covered vehicle, with the side curtains on, and driving a gentle horse under perfect control, going at a moderate walk, approached a street railroad track at a point where, just before going on the track, she could have seen a car at a distance of more than 541 feet. Just as the horse had passed over the track the buggy was struck by a car, and deceased was killed. Experiments showed that before going on the track, the car was within the view of the deceased. A person some distance farther from the approaching car than deceased was heard it, and there was undisputed evidence that the speed of the horse was not increased before or at the time the vehicle reached the track. Deceased had normal hearing and sight and was a woman of at least ordinary intelligence. *Held*, that she was guilty of contributory negligence as a matter of law.

> [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, §§ 210–216.]

> Smith, J., dissenting.

Appeal from Trial Term, Montgomery County.

Action by William Walsh, as administrator of Mary Walsh, deceased, against the Fonda, Johnstown & Gloversville Railroad Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The plaintiff's intestate was killed by one of the defendant's electric cars while she was attempting to cross the track of the defendant at a grade crossing. At the place of the accident the defendant operates a double track electric railroad extending in an easterly and westerly direction, and which is crossed at right angles by a highway. The deceased was driving southerly in a carriage and was killed by a car coming from the west on the southerly track. She was seated alone in the carriage with the top up and side curtains in place. The carriage was struck behind the forward wheel the horse

being entirely uninjured. The car was proceeding at the rate of 30 miles an hour, and gave no warning signal of its approach until the moment of collision. The trial court dismissed the complaint because there was no evidence that the deceased was free from contributory negligence.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

James W. Verbeck, for appellant.
Charles S. Nisbet, for respondent.

COCHRANE, J. The place of the accident was a country highway crossing. The appellant contends that the rule which obtains at street intersections within a city as to the relative rights of cars propelled by electricity, and a person crossing its tracks should apply to the crossing in question, and that the right of the deceased to use the crossing was equal to that of the defendant, and that she therefore may properly have assumed that the motorman of the car would slacken the speed thereof, and hence that she was not as a matter of law guilty of contributory negligence. It is unnecessary to consider the proposition thus presented because the evidence shows a failure on the part of the deceased to use due care to avoid the accident even if it be assumed that the defendant did not have the paramount right of way at the crossing.

The highway over which the deceased approached the railroad led down a hill and through a cut or ravine which obscured her vision until she approached within some little distance of the track. But the evidence is undisputed that when the horse's forward feet were on the north rail of the north track the deceased sitting in the carriage could have seen a car approaching on the east bound track at a distance of more than 541 feet. This was proved by an experiment made subsequent to the accident with the same horse, a similar wagon, and with the plaintiff himself seated therein. The plaintiff's witness who made this experiment also testified:

"I timed with a stop watch how long it would take this horse, which I was told by Walsh was the same horse that deceased drove, from the time the horse's front feet was on the north rail of the west-bound track until the wheels of the wagon would clear the south rail of the east-bound track, the horse going with free rein on a walk. It took 9.2 seconds. If the car was going at the rate of 30 miles an hour, it would take to run a distance of 585 feet about 13.3 seconds."

At this rate it would go 541 feet in about 12.3 seconds, so that before the horse reached the north rail of the north track the car was clearly within the range of vision of the deceased. Harry Rector, a witness for the plaintiff testified that at the time of the accident he was working in his garden which was about 150 feet east of the defendant's tracks and south of the highway; that he saw the deceased drive down the hill toward the crossing holding a rein in each hand; that the horse was under control going on a walk; that a moment or two after she had passed the garden he started to go to the house for a drink of water and heard the car approach from the west and wondered if she had crossed the track safely. He further testified:

"As I came back to the house for a drink of water the carriage was on the track. I should judge nearly between the two tracks; she was moving. I

observed no change in the gait of her horse from the time I first saw it until the collision. And that was a moderate walk. When I first saw the horse and buggy after I went to the house the top was up, the horse was moving, and the side curtains were on the wagon. At that time I should think she was between the east and west bound track and the horse on the east-bound track."

This is the only evidence in the case as to the conduct of the deceased before the collision, and in connection with the circumstances surrounding the accident it shows a failure on her part to exercise proper care. Although the weather was threatening, it was not storming. The hearing and sight of the deceased were normal, and she was a woman of at least ordinary intelligence. Rector who was farther from the approaching car than the deceased heard its approach before the accident. As the deceased was driving slowly there is no reason to suppose that the noise of the carriage prevented her from hearing the car inasmuch as Rector heard it at a greater distance. The horse was gentle, and, from the testimony of Rector, there was no change in its gait after it got on the track in front of the approaching car. That gait was the same "moderate walk" which the horse had when passing his garden 150 feet south of the crossing. The danger was then imminent, but the deceased did not urge the horse onward. The inference is irrestible that had she either looked or listened she would have been apprised of danger. Had she stopped before attempting to cross, or, in attempting to make the crossing, had she increased in a slight degree the speed of the horse she would have escaped harm. She did absolutely nothing. She was apparently utterly oblivious of her surroundings and of the danger which threatened her. The case fails entirely to show her freedom from contributory negligence irrespective of the question as to whether the rights of the defendant were paramount or only equal to those of the deceased. If their rights were equal, nevertheless, the deceased was obligated to look out for her own safety, and in this she failed. Lofsten v. The Brooklyn Heights Railroad Company, 184 N. Y. 148, 76 N. E. 1035; Thompson v. Metropolitan Street Railway Company, 89 App. Div. 10, 85 N. Y. Supp. 181; Lynch v. The Third Avenue Railroad Company, 88 App. Div. 604, 85 N. Y. Supp. 180.

The judgment should be affirmed, with costs. All concur, except SMITH, J., who dissents.